UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RORY THOMAS REMER,<br><br>                Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>                Defendant. | Case No.: 17-CV-1170-JM(WVG)<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 14, 17.]** |

This is an action for judicial review of a decision by the Acting Commissioner of Social Security, Nancy A. Berryhill ("the Commissioner," or "Defendant"), denying Plaintiff Rory Thomas Remer both disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). The parties have filed cross-motions for summary judgment, and the matter is before the undersigned Magistrate Judge for preparation of a Report and Recommendation. For the reasons stated below, the Court RECOMMENDS that Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED.

# I. OVERVIEW OF SOCIAL SECURITY CLAIM PROCEEDINGS

According to the Act, the Social Security Administration ("SSA") administers both the DIB and SSI programs. 42 U.S.C. § 901. Individuals who believe they cannot work due to an impairment can apply to the SSA for disability benefits. *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016). Defendant, as Acting Commissioner of Social Security, reviews the application and determines whether the applicant is disabled. *Gutierrez*, 844 F.3d at 806. If the applicant disagrees with the determination and is denied reconsideration, he or she can request a hearing before an administrative law judge ("ALJ"). *Id.*

## A. SSA's Sequential Five-Step Process

During a hearing, an ALJ must follow a sequential five-step evaluation process to determine whether a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. To be eligible, a claimant must prove he or she is disabled by showing that (1) he or she suffers from a medically-determinable impairment[1] that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more and (2) the severity of the impairment renders the claimant incapable of performing the work that he or she previously performed or, considering the claimant's age, education, and work experience, any other substantially gainful work that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A); 1382(c)(3)(A).

A claimant must meet both of these requirements to qualify as "disabled" under the Act, *id.* § 423(d)(1)(A), (2)(A), and bears the burden of proving that he or she "either was permanently disabled or subject to a condition which became so

---

[1] A medically-determinable physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

severe as to create a disability prior to the date upon which [his or] her disability insured status expired." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The five-step evaluation works through these two requirements. If at any step, the ALJ finds the claimant not disabled, the determination ends at that step and a decision is made. 20 C.F.R. § 416.920(a)(4).

At step one of the sequential evaluation, the ALJ considers the claimant's "work activity, if any." 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds the claimant is engaged in "substantial gainful activity," he or she is not disabled and will be denied benefits. *Id.* §§ 416.920(b), 404.1520(b).

If the claimant is not engaged in gainful work activity, the ALJ proceeds to step two to consider the medical severity of the claimant's impairments. *Id.* § 416.920(a)(ii). The so-called "severity regulation" governs this determination, whereas an ALJ will find the claimant not disabled for a lack of severity if he or she does not have impairments that "significantly limit [his or her] physical or mental ability to do basic work activities." *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ability to do "basic work activities" means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

However, if the claimant has severe impairments, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairments meet or equal one of several listed impairments that the SSA acknowledges are so severe as to preclude substantial gainful activity. *Id.* §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant disabled so long as the impairment meets or equals one of the listed impairments. *Id.* § 404.1520(d).

If the ALJ has not yet deemed a claimant disabled, before considering step four of the sequential process the ALJ must first determine the claimant's Residual

Functional Capacity ("RFC"). *Id.* § 416.920(e). A claimant's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. *Id.* § 404.1545. Essentially, it is the most the claimant can do despite his or her limitations. *Id.* To assess an RFC, an ALJ must consider all of claimant's medical impairments, including those that are not severe. *Id.* § 404.1545(a)(2). If the ALJ does not conclusively determine a claimant's impairment or combination of impairments is disabling at step three, the evaluation advances to step four.

At step four, using the claimant's RFC, the ALJ determines whether the claimant can perform the requirements of their past relevant work. *Id.* § 404.920(f). If the claimant can perform his or her past relevant work, he or she is not disabled. *Id.* However, if the claimant cannot perform past relevant work, the ALJ proceeds to the final step.

At the fifth and final step of the SSA's evaluation, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* § 404.920(v). If the claimant is able to adjust to other work, he or she is not disabled. However, if the claimant is unable to adjust to other work and meets the duration requirement, the claimant is disabled. *Id.* § 416.920(g). Although the claimant generally continues to have the burden of proving disability at step five, a limited burden of going forward with the evidence shifts to the SSA. At this stage, the SSA must present evidence demonstrating that other work exists in significant numbers in the national economy that the claimant is able to do, given his RFC, age, education, and work experience. *Id.* §§ 404.1520, 1560(c), 416.920, 404.1512(f).

**B. SSA Hearings and Appeals Process**

To reiterate, an administrative review process exists and must be followed when determining a claimant's rights under SSA. 20 C.F.R. § 416.1400(a). The review process consists of four steps, beginning with an initial determination. After the initial determination, three more levels of appeal exist: (1) reconsideration, (2) hearing by an ALJ, and (3) review by the Appeals Council. *Id.* § 416.1400(a)(2)-(4). If the claimant is not satisfied with the decision at any step of the process, the claimant has sixty days to seek administrative review. *See id.* §§ 404.933, 416.1433. If the claimant does not request review, the decision becomes the SSA's—and hence Defendant's—binding and final decree. *See id.* §§ 404.905, 416.1405.

A network of SSA field offices and state disability determination services initially process applications for disability benefits. The processing begins when a claimant completes both an application and an adult disability report, and submits those documents to one of the SSA's field offices. If the claimant is dissatisfied with an initial determination, he or she may ask SSA to reconsider. *Id.* § 416.1400(a)(2). Further, if the claimant is dissatisfied with the reconsideration determination, claimant may request a hearing before an ALJ. *Id.* § 416.1400(a)(3). A hearing before an ALJ is informal and non-adversarial. *Id.* § 416.1400(b).

If the claimant is dissatisfied with the decision by the ALJ, the claimant may request that the Appeals Council review the decision. *Id.* § 416.1400(4). The Appeals Council will grant, deny, dismiss, or remand the claimant's request. *Id.* §§ 416.1479. If the claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court pursuant to 42 U.S.C. § 405(g) or § 1383(c). *See id.* §§ 404.981, 416.1481. If a district court remands the claim, the claim is sent to the

Appeals Council, which may either make a decision or refer the matter to another ALJ. *Id.* § 404.983.

## II. BACKGROUND

### A. Administrative Proceedings

Plaintiff protectively filed an application for DIB on October 2, 2013 and for SSI on October 24, 2013. (AR 29.) In both applications, Plaintiff alleged disability beginning January 1, 2011. (*Id.*) Both claims were denied initially on January 31, 2014, and again upon reconsideration on July 11, 2014. (*Id.*)

On December 8, 2015, the ALJ held a hearing to review Plaintiff's claim. (*Id.*) Plaintiff and a vocational expert ("VE") testified at the hearing. (*Id.*) The ALJ issued her written decision on January 29, 2016. (AR 29-47.) At step one of the sequential evaluation process described above, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2011. (AR 31.)

At step two, the ALJ found Plaintiff had severe impairments of (1) seizures, (2) depression/anxiety, and (3) alcohol abuse. (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 32.)

Between steps three and four, in her RFC assessment, the ALJ found Plaintiff could perform medium work, except that he was limited to standing/walking for no more than 4 hours per day; occasional climbing of ramps and stairs, but no climbing of ladders, ropes, and scaffolds; occasional stooping; no hazards; no fast-paced work; nonpublic unskilled, simple, routine tasks that are object oriented; occasional superficial interactions with co-workers and supervisors; no more than moderate noise levels; and no concentrated exposure to pulmonary irritants. (AR 33.)

6

17-CV-1170-JM(WVG)

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a fast food worker and cashier. (*Id.*) The ALJ found the demands of Plaintiff's past relevant work to exceed his residual functional capacity. (*Id.*)

At step five, based on the VE's testimony, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform. (*Id.*) These jobs were "marker," "shipping and receiving weigher," and "mail clerk." (AR 41.) Accordingly, the ALJ found that Plaintiff was not disabled from January 1, 2011, his alleged onset of disability date, through the date of the decision. (*Id.*)

Plaintiff thereafter requested a review of the ALJ's decision (AR 1), but the Appeals Council denied his request for review. (AR 1-7.) The ALJ's decision thereafter became the SSA's final and definitive determination in Plaintiff's case. 42 U.S.C. § 405(g).

On June 11, 2017, Plaintiff commenced the instant action for judicial review. (Doc. No. 1.)[2] Plaintiff thereafter filed a motion for summary judgment ("MSJ") (Doc. No. 14.), and Defendant filed a cross-motion for summary judgment ("Cross-MSJ") and opposition to Plaintiff's MSJ. (Doc. No. 17.) Plaintiff then filed a reply to Defendant's opposition to her MSJ. (Doc. No. 20.)

**B.  Plaintiff's Testimony**

Plaintiff testified at the hearing before the ALJ that he had completed 11.5 years of school and had held three jobs in his lifetime. (AR 52-54.) First, he worked full time as a supervisor at an A&W restaurant. (AR 53.) Plaintiff testified that his employment ended when the A&W closed down, and he would not be able to hold

---

[2] Unless otherwise noted, references to page numbers in documents filed on the Court's CM/ECF system are to electronically-stamped page numbers created by the CM/ECF system, not to the document's original pagination.

7

17-CV-1170-JM(WVG)

that same job today as it required heavy lifting of food products and such. (*Id.*) Plaintiff's second job was as a part-time cashier at 7/11. (AR 54.) He also claimed he would be unable to perform this type of work full-time as the job required him to perform "repetitive tasks with his wrists" such as "lift[ing] two to three pounds repetitively over and over again." (*Id.*) Finally, Plaintiff's most recent employment was with the Spirit Halloween store where he worked four hours a week for approximately four and a half weeks. (AR 53.)

Plaintiff reported having three to five grand mal seizures every four months causing him to black out. (AR 56-58.) He claimed these seizures were caused by stress, usually brought on in social situations. (AR 64.) Plaintiff also had a desire to drink alcohol, but claimed his doctors advised that alcohol consumption was acceptable as long as Plaintiff did not "overdo it." (AR 56.) Plaintiff took the medication "Klonopin" in an attempt to cease his desire for alcohol. (AR 57.) Additionally, Plaintiff had feelings of "worthlessness, just being embarrassed for no reason, hopelessness, and feeling fatigued for no reason" six days a week. (AR 61.) He claimed he had not been officially diagnosed as bipolar, but had been diagnosed with agoraphobia. (AR 62.) Plaintiff only left his house one to two times a month and remained in bed for about three to four hours a day. (AR 70, 62.)

**C.     Vocational Expert's Testimony**

A vocational expert also testified at the hearing. (AR 71-76.) The ALJ posed a hypothetical where the worker was limited to medium work; occasional climbing of ramps or stairs, but no climbing of ladders, ropes or scaffolds; occasional stooping, no hazards, no fast-paced work, unskilled simple routine tasks, object-oriented, occasional superficial interactions with coworkers or supervisors; no more than moderate noise levels; no concentrated exposure to pulmonary irritants,

8

17-CV-1170-JM(WVG)

standing or walking four hours. (AR 72.) In response, the VE reported that past work as fast food worker and cashier were not available. (AR 71-72.)

When determining if other work was available to the Plaintiff, VE narrowed his analysis to "light" exertion jobs since Plaintiff was limited to standing and walking for four hours. (AR 72.) The VE testified that examples of available work included marker, shipping and receiving weigher, and mail clerk. (AR 72-73.) He testified that 226,400 marker jobs, 29,000 shipping and receiving weigher jobs, and 74,100 mail clerk jobs exist in the national economy. (AR 72-73.) The ALJ asked how many times a worker in these positions could miss work and still maintain employment, to which the VE responded that "anything beyond one and a half days a month would lead" to an inability to maintain employment. (AR 73.) The ALJ next asked about unscheduled breaks and if conflicts with the DOT existed.[3] (AR 73.) The VE reported that any breaks beyond 10% of the work day would be an issue and no conflicts existed but clarified that the DOT did not discuss standing and walking or the breaks and absenteeism questions. (AR 73.) Importantly, the VE did not identify and discuss any inconsistency between the reasoning ability required by the three jobs she identified and Plaintiff's reasoning ability limitations. Based on this testimony, in his post-hearing written decision, the ALJ wrote that he

---

[3] The ALJ's entire inquiry into potential DOT conflicts follows:

> Q: Any conflicts with the DOT?
> A: Just that the DOT doesn't discuss stand and walk. [T]hey define light up to six hours a day, and I think I've kind of defined jobs that could be up to that amount or easily amenable to sit/stand stools or benches if they don't already exist in that environment. And DOT also doesn't describe the breaks and absenteeism as I've discussed.

(AR 73.) Neither the ALJ nor the VE discussed reasoning ability levels.

9

17-CV-1170-JM(WVG)

"had determined that the vocational expert's testimony [was] consistent with the information contained in the Dictionary of Occupational Titles." (AR 41.)

### III. STANDARD OF REVIEW

A district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a scintilla, but less than a preponderance. *Id.* Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.* The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The district court may enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The Court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

### IV. DISCUSSION

Plaintiff challenges the ALJ's adverse decision on two grounds. First, he contends the ALJ failed to resolve the apparent and unexplained conflict between the VE testimony and the DOT. Because two of the three jobs the VE identified required reasoning level 3, he claims an apparent conflict exists between this reasoning level and his RFC limitation to simple, routine tasks.

Second, Plaintiff contends the ALJ erred in accepting the VE testimony because his RFC limitation to superficial interaction with co-workers and supervisors conflicts with the Program Operations Manual Systems ("POMS"). Specifically, he claims his limit to superficial interaction is at odds with the

"critical" ability to respond appropriately to criticism in unskilled work, as described in POMS.

The Court first addresses the POMS issue and then the DOT issue, recommending that Defendant's Cross-MSJ be granted.

**A.  No Conflict Exists Between POMS and Plaintiff's RFC Limitation to Superficial Interaction with Co-Workers and Supervisors**

Plaintiff argues the ALJ failed to resolve the conflict between the VE testimony and POMS DI 25020.101 ¶ B.3. (Doc. No. 14-1 at 8.) POMS DI 25020.101 ¶ B.3 designates the ability to "accept instructions and respond appropriately to criticism from supervisors" as critical functions of unskilled work. Plaintiff contends that because he is limited to superficial interactions with coworkers and supervisors, he cannot meet these critical requirements and is therefore unable to perform unskilled work. Defendant challenges this proposition, arguing that (1) there is no indication that Plaintiff cannot accept instructions and respond appropriately to criticism, (2) despite Plaintiff's citation to the dictionary, superficial interactions do not conflict with accepting instructions and responding to criticism, and (3) Plaintiff's reliance on POMS and Social Security Ruling ("SSR") 00-04p is misplaced. (Doc. No. 17 at 10.) Defendant is correct.

First, Plaintiff argues the ability to accept instructions and respond appropriately to criticism is at odds with his limitation to superficial interaction, but offers no compelling evidence as to how this is so. The ALJ here made no finding that Plaintiff could not accept criticism. (*See* AR 31-41.) Moreover, as Defendant rightly notes, Dr. Whitehead's opinion, which was given significant weight, reported "the claimant has no limitation in the ability to understand, carry out, and remember simple instructions." (AR 38.) Thus, although Plaintiff has "some limitations" in his ability to interact with supervisors and co-workers, this does not

mean that he cannot respond appropriately to criticism and the record does not support such a finding.

Plaintiff offers only one source of support for his contention that accepting criticism is beyond the bounds of superficial interaction: a dictionary definition. He argues that criticism naturally falls outside the bounds of "superficial" interaction, which according to the dictionary, "concerns only the obvious or apparent." (Doc. No. 14-1 at 8.) However, this "citation to a dictionary definition of 'superficial' is not persuasive" and fails to establish that a conflict exists. *Markell v. Berryhill*, 2017 U.S. Dist. LEXIS 203447, at *28 (N.D. Cal. Dec. 11, 2017).

Additionally, Plaintiff's reliance on POMS is misplaced. Plaintiff contends that because the Commissioner described these attributes as critical to unskilled work in POMS, the VE's testimony must not contradict POMS. (Doc. No. 14-1 at 8.) While POMS may be "entitled respect" as it offers clarity of an ambiguous regulation, Defendant is correct in that it "does not impose judicially enforceable duties on either this court or the ALJ." (Doc. No. 17 at 10; *see also Shaibi v. Berryhill*, 870 F.3d 874, 880 (9th Cir. 2017) ("POMS guidance is not binding either on the ALJ or on a reviewing court."); *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011); *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010).)

To the extent the POMS provides persuasive authority, it does not establish a conflict between the VE's testimony and the DOT, as Plaintiff has not shown that he is unable to accept instructions and respond appropriately to criticism. *Accord Gregoire v. Berryhill*, 2018 U.S. Dist. LEXIS 32839, at *6 (C.D. Cal. Feb. 27, 2018); *Burtenshaw v. Berryhill*, 2018 U.S. Dist. LEXIS 10924, at *17 (C.D. Cal. Jan. 23, 2018); *Markell v. Berryhill*, 2017 U.S. Dist. LEXIS 203447, at *26-28 (N.D. Cal. Dec. 11, 2017) (finding that Plaintiff failed to show a conflict because

"the ALJ made no finding that Plaintiff could not accept criticism, and the doctor did not "offer an opinion that Plaintiff is limited in responding appropriately to criticism."). Accordingly, the critical functions of unskilled work activity are not at odds with the VE's testimony.

**B. Although Unresolved Conflict Exists Between the VE Testimony and the DOT, the Error Was Harmless**

In his decision, the ALJ found no conflict existed between the VE's testimony and the DOT. (AR 73.) However, the ALJ erred because two of the jobs the VE identified required level-3 reasoning abilities, which the Ninth Circuit has expressly held is inconsistent with a claimant's limitation to simple, routine tasks. That being said, the error was harmless because the "marker" job the VE identified has a lower reasoning level requirement and that lower requirement is consistent with Plaintiff's RFC.[4]

**1. The ALJ Erred by Failing to Resolve the Apparent Conflict Between the VE's Testimony and the DOT**

Plaintiff contends the ALJ erred in accepting the VE's testimony identifying two reasoning level 3 occupations without providing a reasonable basis for resolving the occupations' apparent conflict with his limitation to simple routine tasks. (Doc. No. 14-1 at 6.) Because the ALJ did not acknowledge or resolve this conflict, Plaintiff is correct.

**a. Legal Standard: ALJ's Consideration of VE Testimony**

To meet its burden at step five to identify the existence of other work in the national economy that the claimant can perform, the Commissioner "must 'identify

---

[4] Plaintiff focuses only on the mail clerk and weigher jobs and ignores the marker job and its lower reasoning level requirement. As a result, he does not argue that the ALJ erred in accepting the VE's testimony with respect to his ability to perform marker jobs.

13

specific jobs existing in substantial numbers in the national economy that [the claimant] can perform despite [her] identified limitations.'" *Zavalin*, 778 F.3d at 845 (quoting *Johnson*, 60 F.3d at 1432). In making this determination, the ALJ relies on the DOT, which is the SSA's "primary source of reliable . . . information" about jobs that exist in the national economy. *Id.* at 845-46 (citations omitted). In addition to the DOT, the ALJ relies on the testimony of vocational experts with respect to specific occupations that a claimant can perform in light of her RFC. *Id.* at 846 (citations omitted). The ALJ then determines "whether, given the claimant's [RFC], age, education, and work experience, [the claimant] actually can find some work in the national economy." *Id.* at 846 (citations omitted). Before relying on the testimony of a VE, an ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony] and information provided in the DOT." Social Security Ruling ("SSR") 00-4p, 2000 SSR LEXIS 8, at *8.

        **b.**    **Discussion**

Here, the VE took Plaintiff's RFC into account and testified that he could perform the jobs of a "marker" (DOT 209.587-034), a "shipping and receiving weigher" (DOT 222.387-074), and a "mail clerk" (DOT 209.687-026). (AR 72-73.) The ALJ then asked the VE about any conflicts between his testimony and the DOT, and the VE denied any conflicts existed, clarifying that the DOT did not expressly discuss certain RFC factors such as standing, walking, the ability to take breaks, or absenteeism. (AR 73.) Based on the VE's testimony, the ALJ found Plaintiff could perform these three jobs, that they existed in the national economy in sufficient numbers, and accordingly found Plaintiff was not disabled. However, two of the three occupations the VE identified—"shipping and receiving weigher" and "mail clerk"—required reasoning abilities that are at odds with a person who is limited to simple, routine tasks.

Both of these jobs involve level 3 reasoning, which requires Plaintiff to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *see also* DOT 209.687-026 Mail Clerk ("R3 - LEVEL 3 - Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."); DOT 222.387-074 Shipping-and-Receiving Weigher (same). The Ninth Circuit has held that an inherent inconsistency exists when an ALJ determines a person limited to simple, repetitive tasks can perform a job with a reasoning level of 3. *Zabalin*, 778 F.3d at 846-47; *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017); *Adams v. Astrue*, 2011 U.S. Dist. LEXIS 51662, at *10 (N.D. Cal. May 13, 2011). As a result of this apparent conflict with the DOT, the ALJ erred in accepting the VE testimony without further clarification of the conflict. However, as explained below, this error was harmless.

**2.      The Error Was Harmless**

Error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006), or where it is "clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *see Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *see also Batson v. Comm'r of SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). In this case, the error is harmless if the remaining occupation Plaintiff can perform—the "marker" job—exists in significant numbers either regionally or nationally. *Gutierrez v. Comm'r*

*of Soc. Sec.*, 740 F.3d 519, 523-24 (9th Cir. 2014); *De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018); *Allison v. Astrue,* 425 F. App'x 636, 640 (9th Cir. 2011) (noting that ALJ's error in finding that claimant could work as a small-parts assembler was harmless because other jobs identified by the vocational expert existed in significant numbers); *Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("To the extent the VE was overly broad and included jobs that Lara could both perform and not perform, any error is harmless so long as the jobs that could be done are enough to support the ALJ's decision.").

Here, as the VE testified, Plaintiff is able to perform the marker job, which requires level-2 reasoning. DOT 209.587-034 Marker ("R2 - LEVEL 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.") A job requiring reasoning level 2 raises no apparent conflict with a worker's limitation to simple, repetitive tasks. *See Zavalin*, 778 F.3d at 847; *Rounds v. Comm'r SSA*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (collecting cases); *see also Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th Cir. 2017) (citing illustrative cases); *Keys v. Berryhill*, 2018 U.S. Dist. LEXIS 91285, at *12 (C.D. Cal. May 31, 2018).[5] The VE testified that there are 226,400 such jobs in the national economy. (AR 41, 72.) Although no bright line rule exists for what constitutes a significant number of jobs, the Ninth Circuit has held lower national numbers are sufficient.[6] Because the marker job exists in significant numbers in

---

[5] Plaintiff has not argued that the marker job conflicts with his RFC.

[6] *See, e.g.*, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-529 (9th Cir. 2014) (holding that 25,000 jobs in the national economy presented a close call but was sufficient); *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (holding 622,000 jobs nationally is sufficient); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (64,000 nationwide jobs); *Yelovich v. Colvin*, 532 Fed. Appx. 700, 702 (9th Cir.

the national economy, the ALJ's error at step 5 was harmless and remand is not required.

**C.    Plaintiff is Not Entitled to Summary Judgment**

Based on the foregoing recommendation that Defendant's Cross-MSJ be GRANTED, this Court necessarily recommends that Plaintiff's MSJ be DENIED.

## VI.    CONCLUSION

This Court RECOMMENDS that Plaintiff's MSJ be DENIED and that Defendant's Cross-MSJ be GRANTED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that **no later than July 11, 2018**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on the appeal.

**IT IS FURTHER ORDERED** that, all reply briefs shall be filed no later than **July 18, 2018**.

**IT IS SO ORDERED.**

DATED: June 26, 2018

Hon. William V. Gallo
United States Magistrate Judge

---

2013) (applying harmless error and affirming ALJ's decision because plaintiff could perform one of three identified occupations, where 900 regional and 42,000 national jobs existed for that job); *Allison v. Astrue*, 425 F. App'x 636, 640 (9th Cir. 2011) (152,000 mail room clerk positions and 118,000 office helper jobs was "a significant number of jobs."); *Linda C. v. Berryhill*, 2018 U.S. Dist. LEXIS 102577, at *13 (C.D. Cal. June 19, 2018) (42,000 hospital worker jobs existed in the national economy).